PD1396-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/22/2015 2:54:11 PM
Accepted 5/26/2015 8:30:38 AM
ABEL ACOSTA
CLERK

LAW OFFICES

## GOLDSTEIN, GOLDSTEIN AND HILLEY

310 S. ST. MARY'S STREET, SUITE 2900
SAN ANTONIO, TEXAS 78205-3117

ELI GOLDSTEIN
(1910-1998)
GERALD H. GOLDSTEIN
LICENSED IN TEXAS AND COLORADO
VAN G. HILLEY
CYNTHIA HUJAR ORR
DONALD H. FLANARY, III

AREA CODE 210
TELEPHONE 226-1463

AREA CODE 210
FACSIMILE 226-8367

May 22, 2015

FILED IN
COURT OF CRIMINAL APPEALS

May 26, 2015

ABEL ACOSTA, CLERK

Court of Criminal Appeals
Attn: Abel Acosta, Clerk of the Court
Supreme Court Building
201 West 14th Street, Room 106
Austin, Texas 78701

**RE:** *Jon Thomas Ford vs. State of Texas*, Cause No. PD-1396-14 in the Court of Criminal Appeals, Austin, Texas.

Dear Mr. Acosta,

Undersigned counsel for Jon Thomas Ford, Appellant, respectfully notifies the judges of this Honorable Court of the following record citations and authorities argued today in regard to the above entitled and numbered cause.

In *Smith v. Maryland*, 442 U.S. 735, 741 n.5 (1979), as counsel argued, the majority in footnote 5 stated that a normative test will apply, when circumstances exist that are alien to Fourth Amendment protections in free society.

> "Situations can be imagined, of course, in which '*Katz*' two-pronged inquiry would provide an inadequate index of 'Fourth Amendment' protection. For example, if the Government were suddenly to announce on nationwide television that all homes henceforth would be subject to warrantless entry, individuals thereafter might not in fact entertain any actual expectation of privacy regarding their homes, papers, and effects. Similarly, if a refugee from a totalitarian country, unaware of this Nation's traditions, erroneously assumed that police were continuously monitoring his telephone conversations, a subjective expectation of privacy regarding the contents of his calls might be lacking as well. In such circumstances, where an individual's subjective expectations had been 'conditioned' by influences alien to well-recognized 'Fourth Amendment' freedoms, those subjective expectations obviously could play no meaningful role in ascertaining what the scope of 'Fourth Amendment' protection was. In determining whether a 'legitimate expectation of privacy' existed in such cases, a normative inquiry would be proper." *Smith v. Maryland*, 442 U.S. 735, 741 n.5, 99 S.Ct. 2577, 61 L.Ed.w2d 220(1979).

The dissent by Justice Marshall applied the normative test in the context of numbers dialed into a phone and prophetically noted that persons should not be made to accept pervasive monitoring of every detail of their lives.

> "...Privacy is not a discrete commodity, possessed absolutely or not at all. Those who disclose certain facts to a bank or phone company for a limited business purpose need not assume that this information will be released to other persons for other purposes. . . . Implicit in the concept of assumption of risk is some notion of choice. . . . By contrast here, unless a person is prepared to forgo use of what for many has become a personal or professional necessity, he cannot help but accept the risk of surveillance. It is idle to speak of 'assuming' risk in contexts where, as a practical matter, individuals have no realistic alternative. . . . In my view, whether privacy expectations are legitimate within the meaning of *Katz* depends not on the risks an individual can be presumed to accept when imparting information to third parties, but on the risks he should be forced to assume in a free and open society. . . . And for those 'extensive intrusions that significantly jeopardize [individual's] sense of security . . . . more than self-restraint by law enforcement officials is required.'" *Smith v Maryland*, 442 U.S. 735, 749-752 (1979).

Justice Stewart, in dissent, noted, as counsel argued, that numbers can have content:

> "The numbers dialed from a private telephone-although certainly more prosaic than the conversation itself- are not without 'content.' Most private telephone subscribers may have their own numbers listed in a publicly distributed directory, but I doubt there are any who would be happy to have broadcast to the world a list of the local or long distance numbers they have called. This is not because such a list might in some sense be incriminating, but because it easily could revealed the identities of the persons and the paces called, and thus reveal the most intimate details of a person's life." *Smith v. Maryland*, 442 U.S. 735, at 749 (1979).

Justice Harlan in the concurrence noted that, as counsel argued, "its limitation on the Fourth Amendment, in the present day, bad physics as well as bad law, for a reasonable expectation of privacy may be defeated by electronic as well as physical invasion." *Katz v. U.S.*, 389 U.S. 347, at 362.

The Second Circuit in *ACLU v. Clapper*, explained the significant amount of information that can be gained from telephone metadata, including historic cell phone location data at page 9. The concept of a proxy for content that counsel argued in noted here:

> "That telephone metadata do not directly reveal the content of telephone calls, however, does not vitiate the privacy concerns arising out of the government's bulk collection of such data. Appellants and amici take pains to emphasize the starling amount of detailed information metadata can reveal – 'information that could traditionally only be obtained by examining the contents of communications' and that is therefore 'often a proxy for content.' Joint App'x 50 (Declaration of Professor Edward W. Felten). For example, a call to a single-purpose telephone number such as 'hotline' might reveal that an individual is: a

victim of domestic violence or rape; a veteran; suffering from an addiction of one type or another; contemplating suicide; or reporting a crime. Metadata can reveal civil, political, or religious affiliations; they can also reveal an individual social status, or whether and when he or she is involved in intimate relationships.

And Justice Sotomayor in her concurrence, in *Jones* at page 956, noted that the low cost ability of law enforcement, "in its unfettered discretion," to choose to "track-- may alter the relationship between citizen and government in a way that is inimical to democratic society," and set out *Kyllo's* open question that through duplicating traditional surveillance through electronic means, is an unconstitutional invasion of privacy. *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d. 94 (2001)

She stated that leaving such questions to the Executive branch without oversight by the Court would lead to a "tool . . . amenable to misuse, especially in light of the Fourth Amendment." She also noted that *Knotts* acknowledged that different constitutional policies may apply to invasive law enforcement practices that tracked a person's movements. *United States v. Knotts*, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983). It was in this context that Justice Sotomayor said that the approach of the third-party record doctrine is ill suited to the digital age.

It is the pervasive collection of such private information that reveals the intimate details of our lives that so drastically changes the dynamic between the citizen and its government in a free society. "The data includes "unique 'identity numbers', associations with the equipment . . . information about the routing of a call through the telephone network [and] . . . information about a caller's general location. *ACLU v. Clapper*, 2015 U.S. App. Lexis. 7531, at 9. This caused the Second Circuit to observe that the statute intended to allow the collection of bulk data (including historical cell tower data) by the NSA could not have meant this, consistent with the Constitution and requirements of the Fourth Amendment. This "expansive development of government [collection] of formerly private records and the collection "metadata exceeds the scope of what is authorized by §215" and becomes a seizure. "A violation of the **Fourth Amendment** is fully accomplished at the time of an unreasonable governmental intrusion." *ACLU v. Clapper*, 2015 U.S. App. Lexis. 7531, at 77.

The citation from the Supreme Court in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) [J. Harlan concurring] where counsel quoted its explanation, in argument, that requiring physical penetration of the petitioner's premises is not necessary to find a Fourth Amendment violation: "in the present day, is bad physics as well as bad law, for reasonable expectations of privacy may be defeated by electronic as well as physical invasion," is at page 362.

In *U.S. v. Jones*, Justice Scalia for the majority, acknowledged that it "may be that achieving the same result through electronic means, without an accompanying trespass, is an unconstitutional invasion of privacy," then stated that the question before the Court did not require an answer to that question at that time. *Jones*, 132 S. Ct. 945, 954 (2012).

Thank you for your attention to this matter. Please do not hesitate to contact my office if you have any questions.

Sincerely,

*/s/ Cynthia E. Orr*

Cynthia E. Orr
  Goldstein, Goldstein & Hilley

cc: ADA Jay Brandon

4